IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CASEY RIEDEMANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:04 cv 154 WDS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter is before the Court on the Motion to Amend the Complaint filed by the Plaintiff, Casey Riedemann, on June 28, 2005 (Doc. 21) and the Motion to Limit Plaintiff's Damages Claim filed by the defendant, the United States of America, on July 18, 2005 (Doc. 26). For the reasons set forth below, the Motion to Amend is **DENIED** and the Motion to Limit is **GRANTED**.

### BACKGROUND

The Plaintiff alleges that she was involved in a traffic accident with a United States Postal Office truck on May 11, 2002. She filed a "Claim for Damage, Injury, or Death" (hereinafter "claim") with the United States Postal Office pursuant to the Federal Tort Claims Act (FTCA) on August 21, 2003 claiming $250,000 in personal injuries and $200.00 in property damage. After this claim was denied, the Plaintiff filed a lawsuit with this Court on March 4, 2004. In the present motion to amend, the Plaintiff seeks to amend her complaint to increase her prayer for damages due to increased medical costs, and pain and suffering, incurred after she filed her claim.

When the Plaintiff filed her motion to amend, this matter was scheduled for the

1

presumptive trial month of August, 2005.  This matter now has been reset and has a final pretrial conference scheduled on October 17, 2005 with a presumptive trial month of November, 2005.

**Evidentiary Hearing**

On September 20, 2005, this Court conducted an evidentiary hearing on the Plaintiff's motion to amend.  Each party presented arguments regarding whether the Plaintiff may amend her pleading at this stage of the proceedings.  The Plaintiff presented, as evidence, documents that she had submitted to chambers and which also are attached to the Plaintiff's motion to amend.  Plaintiff's Exhibit A is a letter dated May 30, 2002 to Attorney Rich regarding the Plaintiff's claim.  Plaintiff's Exhibit B is the claims form itself.  Plaintiff's Exhibit C is an Emergency Room Report dated September 20, 2003 from the Edward A. Utlaut Memorial Hospital.  Plaintiff's Exhibit D is an Initial Spinal Examination report (with attachments) dated November 6, 2003 from The Orthopedic Center of St. Louis.[1]  The Defendant presented the entire transcript of Dr. Matthew Gornet's deposition, which was taken on August 8, 2005.  In addition to these exhibits presented at the hearing, the Defendant attached the deposition transcript of the Plaintiff, taken on January 20, 2005, to its motion to limit damages.  The Defendant also has attached, as Exhibit 1, the entire claims form which includes a list of medical treatment dates and places.  The Defendant's two remaining exhibits are a Radiology Report dated December 16, 2002 (Exhibit 3) and an Initial Interview form dated May 11, 2002 from the Edward A. Utlaut Hospital (Exhibit 4).

The evidence presented reveal a number of undisputed facts.  Prior to the accident, the

---

[1] The Exhibits presented at the Hearing, which contain additional information, will be referred to in this order.

Plaintiff was fully aware that she had an allergy to latex and that it caused adverse physical reactions (Pl. Ex. D at p. 8). As stated above, the accident occurred on May 11, 2002. The Plaintiff sought medical care immediately thereafter (Casey Riedemann Deposition, 1/20/05, pp. 18-19). The Plaintiff testified that, after the accident, she was placed on bed rest for "severe back pain" (Riedemann Dep. at p. 25). A week after the accident, the Plaintiff, who was thought to have whiplash, was prescribed physical therapy for her neck and low back by Dr. Tricia Gifford. (Riedemann Dep. at p. 26, 28). She also began seeing Dr. Matthew Chanault, a chiropractor, and had a number of x-rays taken in the Fall of 2002[2] (Riedemann Dep. at p.29-30). Her neck problems resolved by the end of 2002 with chiropractic care and physical therapy (Riedemann Dep. at pp. 34-35). Her back problems, however, did not resolve. A December 16, 2002 x-ray revealed: "mild end-plate degenerative change at L5-S1 with grade I anterior spodylolisthesis of L5 on S1 and spondylolysis at this level. There is most likely neural foraminal narrowing at this level" (Def. Ex. 3 (all caps omitted)). The Plaintiff also saw Dr. Burger, a neurologist, in the first half of 2003 for her back pain and continued to see Dr. Gifford for her back pain (Riedemann Dep. at p. 33). Dr. Burger performed "epidural blocks" for her back pain that did not result in "permanent relief" (Riedemann Dep. at p. 34). The Plaintiff argued that, prior to the filing of her claim, she was being treated conservatively, i.e. non-surgically, with minimal relief of her back pain

On August 21, 2003, the Plaintiff filed her claim with the United States Post Office (Pl. Ex. B, p. 1). In this claim, the Plaintiff alleged $250,000 in personal injury damages and

---

[2] At the time of the accident, the Plaintiff was pregnant and no x-rays or scans could be performed.

$200.00 in property damage (Pl. Ex. B, p. 1). The claim also states: "See Medical Records regarding Casey Ann Riedemann, Date of Accident, 5-11-02. Ms. Riedemann is still treating and has been referred to an orthopedic surgeon for evaluation on 11-14-03" (Pl. Ex. B, p. 1). Attached to the claim is a listing of the medical care that the Plaintiff had received and the appointments that she will have in the future (Def. Ex. 2 at pp. 3-6). The Plaintiff's subsequent medical treatments began with a trip to the emergency room on September 20, 2003 (Pl. Ex. C).

The report of the September 20, 2003 hospital visit states that the Plaintiff appeared because of back pain (Pl. Ex. C). This report further indicates:

> Mrs. Riedemann, a 25 year old while female, complains of low back pain. She states that her back pain is particularly severe today with radiation down both legs. She has had chronic back pain for about one year since a motor vehicle accident. She denies any recent fever, chills, dysuria or urinary frequency.

The report states a diagnosis of "Chronic back pain" and an apparent prescription of Vicodin. Thereafter, the Plaintiff began to see Dr. Matthew F. Gornet starting on November 6, 2003 (Pl. Ex. D). Dr. Gornet's reports show that during the Plaintiff's "first visit and spinal examination" related to back pain, "[s]he states her problem began after a motor vehicle accident." This report notes an allergy to latex and states that an MRI scan from December, 2002 as well as undated radiographs reveal "isthmic spondylolisthesis at L5-S1" and "disc hydration and central annular lesion at L5-S1" (Pl. Ex. D at p. 2). Notes of follow-up visits with Dr. Gornet state that a February 16, 2004 MRI scan "clearly reveal[s] central disc herniation at L5-S1 with an isthmic spondylolisthesis at L5-S1" and further indicates the possible benefit of surgery. Subsequent notes regarding a phone call on April 22, 2004 and a visit on August 19, 2004 reveal that the Plaintiff's latex allergy would make surgery infeasible (Pl. Ex. D at p. 5). The Plaintiff noted

that this is the first medical record that indicates that the Plaintiff's back condition cannot be resolved by surgery. At this point, the Plaintiff argued, she first became aware that her condition will become a chronic condition.

On August 8, 2005, Dr. Gornet's deposition was taken. He indicated that after seeing the Plaintiff on August 19, 2004 he did not next see her until August 7, 2005 (Matthew Gornet Deposition, 8/8/05, at p. 24). Between that time period, Dr. Gornet testified that he continued to research new treatment options for the Plaintiff (Gronet Dep. at p. 25). Dr. Gornet informed the Plaintiff that there are new treatment options that will be "coming out" and that further diagnostic tests, i.e. MRI and CT scans, will have to be taken to see if she can benefit from these new treatments (Gornet Dep. at p. 28). However, the Plaintiff is now pregnant and any new procedure would have to wait until she delivers in March, 2006 (Gornet Dep. at p. 28). Dr. Gornet further testified that the Plaintiff's "prognosis is pretty poor" because she has a "significant structural problem" (Gornet Dep. at p. 30). He stated that without surgery, her condition may worsen with increased activity (Gornet Dep. at p. 30-31). However, with surgery her condition would be improved (Gornet Dep. at p. 31-32).

In light of the prognosis after the Plaintiff filed her claim, she seeks to amend her complaint to increase her damages request to $975,000. At the hearing, the parties also proposed staying this case pending the Plaintiff's pregnancy and the exploration of further treatment options.

## DISCUSSION

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading and that leave to amend "shall be freely given when justice so requires." However, leave to amend

may be denied if there is "undue delay, bad faith, dilatory motive, prejudice, or futility." <u>Guise v. BWM Mortgage, LLC.,</u> 377 F.3d 795, 801 (7th Cir. 2004). The granting or denying of a motion to amend is reviewed for an abuse of discretion. <u>Butts v. Aurora Health Care, Inc.</u>, 387 F.3d 921, 925 (7th Cir. 2004).

The Plaintiff has filed suit pursuant to the FTCA. 28 U.S.C. §§2671-2680. The Act first provides that a Plaintiff must present her claim to the federal agency and be denied relief. 28 U.S.C. §2675(a). Pursuant to 28 U.S.C. §2675(b), she can only seek damages, in addition to those sought before the federal agency, if "the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." The burden is upon the Plaintiff to show that evidence was newly discovered or that there are intervening facts. <u>Zurba v. United States</u>, 318 F.3d 736, 739 (7th Cir. 2003).

From the records provided by the Plaintiff, the fact that the Plaintiff had back pain was not "newly discovered" – she had asserted that she experienced back pain since the accident and the December, 2002 x-ray revealed physical problems with her back. Also, the fact that the Plaintiff was allergic to latex also was known to her prior to the filing of the claim. Therefore, damages based on back pain were not apparent because of "newly discovered evidence" but rather were known to the Plaintiff shortly after the 2002 accident and certainly prior to the filing of her claim in 2003. The evidence also reveals, however, that a diagnosis of a back condition with a recommendation of surgery was not given until after the filing of the claim. With respect to the surgery, notwithstanding the Plaintiff's knowledge of her latex allergy, her actual inability to undergo surgery because of this allergy was not finalized until after the filing of the claim.

And, finally, it was not until August 19, 2004 that she was told that her back pain would continue indefinitely because surgery was infeasible.

In Zurba, cited above, the Plaintiff, Ludmilla Zurba, was struck by a car being driven by an FBI agent. Prior to filing an administrative claim for damages, in which she claimed $300,000 in damages, Zurba suffered from anxiety related problems. After her claim was denied, she filed suit and claimed $1 million in damages. In affirming the District Court's denial of the government's motion to limit the Plaintiff's damages, the Seventh Circuit Court of Appeals held that the District Court did not commit clear error. 318 F.3d at 739. The Court held that "[a]n unforeseen worsening of a known injury may constitute 'newly discovery evidence' or 'intervening facts.'" Id. In so holding, the Seventh Circuit cited to an Eighth Circuit Court of Appeals case, Michels v. United States, 31 F.3d 686 (8th Cir. 1994). In Michels, the Eighth Circuit stated that:

> The government relies upon cases from other circuits holding that, when existing medical evidence and advice put the claimant "on fair notice to guard against the worst-case scenario" in preparing the administrative claim, a § 2675(b) motion to increase that claim in litigation will be denied. In our view, that is a proper interpretation of the phrase "not reasonably discoverable," and we agree with cases such as Reilly [v. United States, 863 F.2d 149 (1st Cir. 1988)]. But we also agree with the many decisions acknowledging that a known injury can worsen in ways not reasonably discoverable by the claimant and his or her treating physician, and holding that such "newly discovered evidence" or "intervening facts," if convincingly proved, can warrant § 2675(b) relief.

> Michels, 31 F.3d at 688 (citations omitted).

The First Circuit's own lively rendition of the requirements of section 2675(b) is as follows:

> Because the statute itself renders the state of a claimant's knowledge (actual or constructive) at the time of presentment of

>   the claim of decretory significance, the mechanics of a § 2675(b) inquiry must be double-barrelled: What should the party have known? When should she have known it? To be binding in this context, knowledge need not be certain. In the same vein, intelligence which serves only to bear out earlier suspicions cannot unlock the FTCA's narrow escape hatch. Diagnoses which are no more than cumulative and confirmatory of earlier diagnoses are neither "newly discovered evidence" nor "intervening facts" for the purposes of § 2675(b). We agree with the Second Circuit that the statute demands a showing that "some new and previously unforeseen information came to light" between the time of filing the administrative claim and the trial on damages. And, the newly-emergent datum must be material.
>
>   Reilly, 863 F.2d at 171.

The question of whether the Plaintiff may increase her damages demand, therefore, is dependent on the facts presented by the Plaintiff and is contingent on her meeting her burden.

The answer to this question hinges on whether the "newly discovered evidence," the diagnosis in August, 19, 2004 that the Plaintiff cannot have surgery and that her condition is chronic, was "not reasonably discoverable" when the Plaintiff submitted her claim. It is clear from the evidence that Plaintiff knew that she had back pain and a back condition from the accident. The December, 2002 x-ray (taken prior to the filing of the claim) revealed "degenerative change at L5-S1 with grade I spondylolisthesis of L5 on S1 and spondylolysis at this level." At the hearing, the Plaintiff's attorney argued that this diagnosis represented degenerative changes as opposed to structural injuries to the Plaintiff's back that may require surgery. Of course, no actual evidence was introduced to support this contention and it is not immediately apparent from the x-ray's conclusion section. It is also clear that the Plaintiff received no relief from conservative treatment of her back from the time of the accident to the filing of the claim. And, the claim itself, while not specifically mentioning a back condition,

notes that the Plaintiff is still being treated and has been referred to an "orthopedic surgeon."

This referral is telling. Attached to the claim is a list of medical expenses and an indication of future appointments with Drs. Gornet (the orthopedic surgeon) and Burger (the neurologist). Clearly, the Plaintiff anticipated continued medical care related to her back and actively sought additional care because conservative treatment was not working. This would account for a damages claim well in excess of actual medical expenses. What is particularly telling is that the Plaintiff had an appointment to visit an orthopedic *surgeon*. Any reasonable person would have anticipated that a surgeon would recommend surgery as a possible, even probable, resolution to her back problems, especially as conservative treatments had not worked. And, given the Plaintiff's knowledge of her latex allergy, she should at least have been aware that surgery may be problematic or would be unsuccessful. Even if the Plaintiff may not have been aware of the reason why surgery would not be successful (i.e. her latex allergy), any reasonable person would at least know that surgery, for any number of reasons, may not resolve their back problems. While the Plaintiff's attorney argued that this was beyond the Plaintiff's realm of knowledge, he presented *no* evidence that the Plaintiff was not aware of these possibilities. Unfortunately, what has occurred in this case is that the worst possible prognosis of a known back condition has been realized: the Plaintiff may have to live with a chronic back condition and pain due to the accident.

This case is distinguishable from Zurba, where the Court of Appeals affirmed an increase the Plaintiff's damages claim, in a number of respects. First, Zurba's psychological condition was not mentioned in her claim. Here, the Plaintiff's claim, while not specifically listing "back pain," clearly relates to back pain based on the type of medical care she was receiving

9

(chiropractic, neurological, orthopedic).  Second, Zurba's condition worsened in the years following her accident.  Here, there is no evidence that the Plaintiff's condition has worsened.  Rather, the evidence reveals a chronic condition that has not been resolved by conservative treatment and that cannot be resolved through surgery.  In diagnosing the Plaintiff and recommending surgery, Dr. Gornet relied on the December 2002 scans which revealed spondylosisthesis.  The Plaintiff also made no argument, nor pointed to any particular evidence, that would indicate that the Plaintiff's back condition worsened.   The Plaintiff's condition is not newly discovered because it does not "*materially differ*[] from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed."  Zurba, 318 F.3d at 741 (emphasis in original, citation and quotation marks omitted).  This Court can only find that it was reasonable for the Plaintiff to anticipate surgery and to further anticipate the consequences of surgery, limited or no relief.  Such information was reasonably discoverable prior to filing the claim and certainly was anticipated in the claim by the Plaintiff's continued medical treatment and referral to a surgeon.

This conclusion also is mandated by policy considerations that underlie §2675.  The object of the statute is to give the government an accurate picture of its exposure in such tort cases.  Reilly, 863 F.2d at 173; Low, 795 F.2d at 470-471.  The Plaintiff's claim limited damages to $250,200.  At the hearing, the Plaintiff anticipated quadruple the amount of damages.  The Plaintiff was represented by counsel when she filed her claim and the claims form itself does not limit the amount of damages that she could have claimed.  Just as the First Circuit observed, "[i]f a Plaintiff misjudges, as to matters known or easily deducible when her claim is filed, it seems more equitable for her to bear the burden of miscalculation than to impose it on the sovereign."

Reilly, 863 F.3d at 173 (citation omitted).  In this case, the Plaintiff did not meet her burden of showing, through evidence, that her increased claim is due to newly discovered evidence or intervening facts.  The Plaintiff reasonably could have anticipated the chronic nature of her condition and should have accounted for it in her original claim.

One final note, the Court is troubled by the delay in bringing this motion to amend.  By the Plaintiff's own admission, she finally knew of the infeasibility of surgery and the chronic nature of her condition on August 19, 2004.  It was not until June 28, 2005 that she sought to amend her complaint to include the additional damages.  Her motion was filed more than two months after the discovery deadline, two months after the dispositive motion filing deadline, and only three weeks prior to the final pretrial conference and a month prior to trial.[3]  This is a clear example of undue delay.  The Plaintiff offered no excuse as to why she waited almost a year to amend her complaint.  The only thing that would make this delay tenable is that the Defendant has represented to the Court that no additional discovery will be necessary.  However, the finding of prejudice is not necessary for this Court to deny a motion to amend – undue delay can suffice.  Given the failure of the Plaintiff to offer any excuse as to why she waited a year to file this motion to amend, either in her brief or during the hearing, this Court finds, in addition to the reasons stated above, that the motion also must be denied because of undue delay.

## CONCLUSION

For the foregoing reasons, the Motion to Amend the Complaint filed by the Plaintiff, Casey Riedemann, on June 28, 2005 is **DENIED** (Doc. 21) and the Motion to Limit Plaintiff's Damages Claim filed by the defendant, the United States of America, on July 18, 2005 is

---

[3] The final pretrial conference and trial dates have since been moved.

**GRANTED** (Doc. 26).


**DATED: October 6, 2005**

**s/ Donald G. Wilkerson**
**DONALD G. WILKERSON**
**United States Magistrate Judge**
